G. David Robertson, Esq. (NV Bar No. 1001)
Kirk C. Johnson, Esq. (NV Bar No. 4299)
ROBERTSON, JOHNSON, MILLER & WILLIAMSON
50 West Liberty Street, Suite 600
Reno, Nevada 89501
Telephone:     (775) 329-5600
Facsimile:      (775) 348-8300
Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEVADA

| | |
|---|---|
| PROLOGIS NA3 NV II, LLC, | |
| Plaintiff, | Case No.: 3:11-cv-00346-HDM-WGC |
| vs. | **PLAINTIFF'S MOTION FOR ATTORNEYS' FEES AND NON-TAXABLE LITIGATION EXPENSES** |
| IGT, Inc. | |
| Defendant. | |

COMES NOW Plaintiff above-named ("Prologis"), by and through its counsel of record, Robertson, Johnson, Miller & Williamson, and hereby moves this Honorable Court for an order awarding Prologis its reasonable attorneys' fees and litigation expenses as directed by the Court in its Findings of Fact and Conclusions of Law; Order, filed January 29, 2014 ("Decision").

This Motion is supported by the attached declarations of G. David Robertson, Kirk C. Johnson, Don Springmeyer, and Michael C. Chapman, as well as the attached Memorandum of Points and Authorities, all other pleadings and papers on file herein and any oral argument which this Court may choose to hear on the Motion.

RESPECTFULLY SUBMITTED this 28th day of February, 2014.

ROBERTSON, JOHNSON, MILLER & WILLIAMSON
50 West Liberty Street, Suite 600
Reno, Nevada  89501

By:     /s/  G. David Robertson
        G. David Robertson, Esq.
        Kirk C. Johnson, Esq.
        Attorneys for Plaintiff

Robertson, Johnson,
Miller & Williamson
50 West Liberty Street,
Suite 600
Reno, Nevada 89501

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.    INTRODUCTION

From the very inception of this dispute in 2010, Defendant IGT, Inc. ("Defendant") chose to fully and thoroughly litigate this matter -- which certainly was its prerogative.  Unfortunately, however, this litigation posture caused Prologis to expend far more time and effort on the case than should have been necessary.  From refusals to stipulate to the dismissal of the summary eviction action, to the demand that all potential witnesses be deposed, its unreasonable settlement position, and insisting upon using live witnesses at trial rather than the Court-proposed deposition/streamlined procedure, Defendant's litigation strategy has simply resulted in the substantial expenditure of attorney time and, thus, inflated the fees which Defendant is now contractually-obligated to pay.  Indeed, the fact that the dispute has lasted nearly four (4) years and required a hard-fought trial are testament to the effort which Prologis needed to expend to ultimately prevail in this case.

Given this concerted effort, counsel's market billing rates and the excellent trial result (Judgment in the amount of $2,531,299.00), the Lease authorizes, and the lodestar calculation supports, a full fee award to Prologis in the amount of $361,333.80 (which reflects a self-imposed, across-the-board 10% cut to ensure reasonableness).

Additionally, various provisions in the Lease (as well as Prologis's offer of judgment) authorize the recovery of Prologis's out-of-pocket litigation expenses (which might otherwise be unrecoverable under Fed. R. Civ. P. 54(d)(1) and 28 U.S.C. § 1920) in the amount of $29,443.13.

In sum, therefore the Court should add a total of $390,776.93 in attorney's fees and litigation expenses to the Judgment.[1]

## II.    RELEVANT BACKGROUND[2]

This dispute arose from an Industrial Lease Agreement (hereinafter "Lease") between DP Industrial, LLC (Prologis's predecessor-in-interest) and Defendant, under the terms of which

---

[1] Subject to the inclusion of any additional fees and costs which Prologis might incur since the fees cut-off date for this Motion – February 26, 2014.

[2] The factual assertions made in this Section, and indeed the entire Motion, are generally supported by the attached declarations of Kirk C. Johnson and G. David Robertson.

Robertson, Johnson, Miller & Williamson
50 West Liberty Street, Suite 600
Reno, Nevada 89501

1  Defendant, as tenant, leased 100,800 square feet of industrial space located at 1150 Trademark
2  Drive, Suite 102, Reno, Nevada.  (Decision at ¶ 1.)

3        In the Second Amendment to the Lease, Prologis granted Defendant an early termination
4  option which Defendant could exercise by providing written notice and tendering a termination
5  fee "on or before May 1, 2010."  (Decision at ¶ 5.)

6        Defendant negligently failed to exercise its termination option in a timely manner when it
7  failed to provide its written notice and tender its termination fee on or before May 1, 2010.
8  (Decision at ¶ 17.)  Indeed, Defendant did not offer to tender these items until May 11, 2010, as
9  Mr. Stecker had forgotten about the May 1 deadline date.  (Decision ¶ 19.)

10       Despite Prologis's eventual decision to reject Defendant's untimely exercise of the option
11  (and its communication of same to Defendant), (Decision at ¶ 33), Defendant proceeded with its
12  plan to prematurely vacate the premises anyway on June 30, 2010, failing to pay any rent or
13  other charges thereafter.  (Decision at ¶ 44.)

14       On July 14, 2010, Prologis filed a summary eviction action to eliminate any
15  concerns/arguments that it would be acting wrongfully in re-taking possession of Defendant's
16  premises.  (See Decision at ¶ 46.)  Defendant contested this seemingly-innocuous proceeding by
17  filing a tenant affidavit.  (Id.)

18       After it became abundantly clear that Defendant was not going to make any claims to
19  possession of the premises, Prologis's counsel called Defendant's counsel in early October 2010
20  seeking a stipulated dismissal of the summary eviction action as it had become moot.
21  Defendant's counsel requested that Prologis's counsel prepare and send a draft stipulation, which
22  he did.  (Exhibit "A.")  Defendant responded by demanding that the dismissal be "with
23  prejudice" and that Prologis pay the $1,713 Defendant had spent in (needlessly) contesting the
24  summary eviction proceeding.  (Exhibit "B.")  After attempting to negotiate a lower payment
25  amount, Prologis ultimately acquiesced to Defendant's demand and tendered the $1,713, but
26  continued to request that the dismissal be without prejudice.  (Exhibit "C.")  Defendant again
27  rejected Prologis's offer, instead insisting on a prejudicial dismissal.  (Exhibit "D.")  Prologis
28  eventually determined that it could simply dismiss the summary eviction action unilaterally,

Robertson, Johnson,
Miller & Williamson
50 West Liberty Street,
Suite 600
Reno, Nevada 89501

PLAINTIFF'S MOTION FOR ATTORNEYS' FEES AND NON-TAXABLE LITIGATION EXPENSES
PAGE 3

without prejudice, as Defendant had not filed an answer. (<u>See</u> Exhibit "E.") After Prologis filed its unilateral notice of dismissal, Defendant filed a motion to set it aside, and the briefing escalated from there, but ended when the state court eventually denied Defendant's motion, thus ending the summary eviction action approximately seven (7) months (and thousands of dollars in attorneys' fees) after Prologis initially sought the stipulated dismissal. (<u>See</u> Exhibit "F.")

Prologis filed the instant action on May 13, 2011. After Defendant answered, the parties conducted the Rule 26(f) conference, exchanged hundreds of documents and exchanged written discovery. Thereafter, the parties noticed and conducted nine depositions. The parties also continued to supplement their Rule 26(f) disclosures and ultimately produced and Bates-stamped approximately 3,500 pages of documents. Prologis also made numerous tenant files containing thousands of pages available for Defendant's review and analysis.

Prologis ultimately determined that it needed to, and did, designate an expert economist to testify as to the present value of the "lost future rent" aspect of its damages. (<u>See</u> Exhibit "F.") Defendant tried to designate some experts but failed to comply with most of the requirements for expert designation. Prologis was thus obligated to research these issues and write to Defendant identifying all of the deficiencies with the expert designations and requesting that it withdraw the designations. (<u>See</u> Exhibit "H" at 3-4.) Although Defendant never withdrew its designations, neither did it move forward in attempting to use the experts, so the issue was eventually resolved by the passage of time. Prologis effectively withdrew its expert designation when the trial date was set beyond the end of the IGT lease term as the later date eliminated any "lost future rent" for which a present value calculation would be necessary.

One other time-consuming (and expensive) endeavor during discovery was Defendant's motion to compel discovery from Prologis (which was filed without Defendant having first conducted a proper meet-and-confer). After the matter was fully briefed and a hearing held, Defendant's motion was ultimately denied. (<u>See</u> Docket Nos. 41 & 42.)

In August 2012, both parties filed cross-motions for summary judgment. The motions were both very substantial (i.e., several hundred pages long with exhibits), with Defendant requesting to file an excessively-long brief (which the Court ultimately denied). After extensive

Robertson, Johnson,
Miller & Williamson
50 West Liberty Street,
Suite 600
Reno, Nevada 89501

PLAINTIFF'S MOTION FOR ATTORNEYS' FEES AND NON-TAXABLE LITIGATION EXPENSES
PAGE 4

1   oppositions and replies were filed, the Court conducted a thorough hearing on the motions (for

2   which Prologis's counsel duly prepared), and ultimately denied both motions.

3       The parties also participated in a private mediation with the Honorable Jerry Carr

4   Whitehead, which necessitated a significant amount of time in preparation and attendance.

5   Unfortunately, as is obvious, that mediation was unsuccessful.

6       The parties thereafter proceeded through all of the pre-trial work-up of the case (which

7   was considerable) and tried it to the Court sitting without a jury.  The substantial nature of this

8   work is established by the fact that Prologis's counsel expended more than 25% of their time

9   (i.e., more than 370 hours) on this case in just the six (6) months since September 1, 2013

10  (preparing for and attending trial and working on post-trial matters).

11      On January 29, 2014, the Court entered a Judgment in favor of Prologis, awarding it

12  $2,531,299.00 in damages, finding that Prologis is entitled to its fees and costs under the Lease,

13  and directing that Prologis file a motion for fees and costs on or before March 1, 2014.  (See

14  Decision at 25-26 ¶¶ 31-33.)

15  **III.   LEGAL ARGUMENT**

16      **A.   PROLOGIS IS ENTITLED TO RECOVER $361,333.80 IN ATTORNEYS'
           FEES FROM DEFENDANT**

17

18          **1.   The Lease Expressly Authorizes Prologis's Fee Recovery**

19      The first step in any request to recover attorneys' fees is to identify the source which

20  authorizes the fee award.  Because this action was commenced based upon diversity jurisdiction,

21  the Court must apply Nevada state law to determine whether an award of fees is authorized.  In

22  re USA Commercial Mrtg. Co. v. Compass USA SPE LLC, 802 F. Supp. 2d 1147, 1178 (D. Nev.

23  2011).  Under Nevada law, a party may recover its attorneys' fees from the losing party only if

24  authorized by statute, rule or contract.  Id.

25      Here, as the Court noted in its Decision, the Lease expressly authorizes the prevailing

26  party in any litigation to recover its fees and costs from the opposing party:  "In the event of any

27  legal action or proceeding between the parties hereto, reasonable attorneys' fees and expenses of

28  the prevailing party in any such action or proceedings will be added to the judgment therein."

Robertson, Johnson,
Miller & Williamson
50 West Liberty Street,
Suite 600
Reno, Nevada 89501

(Exhibit "I" § 22.01.)  Another provision in the Lease authorizes a fee award thusly:  "In any action brought by the Landlord to enforce any of its rights under or arising from this Lease, Landlord shall be entitled to receive its costs and legal expenses, including reasonable attorneys' fees, whether or not such action is prosecuted to judgment."  (Exhibit "I" § 22.06.)[3]

As applied to this case, these provisions clearly authorize a fee award to Prologis as this case is a "legal action . . . between the parties" brought by the landlord to enforce its rights under the Lease.  Moreover, it is indisputable that Prologis is the "prevailing party."  (See Decision at 26, ¶ 32.)

Accordingly, there is ample authorization for a fee award in Prologis's favor.

### 2.    The Lodestar Calculation Supports A Full Attorneys' Fees Recovery of $ 361,333.80

"Once a party establishes its entitlement to an attorneys' fees award, the Court must determine the reasonableness of such an award."  In re USA Commercial Mrtg. Co., 802 F. Supp. 2d at 1178.  In this Circuit, the "starting point for determining the reasonableness of the attorney's fees is the calculation of the lodestar."  Nevada Controls, LLC v. Wind Pump Power, LLC, No. 3:12-cv-00068, 2013 U.S. Dist. LEXIS 103552, at *2-3 (D. Nev. July 24, 2013).  "In order to calculate the lodestar, the court must 'multiply the number of hours the prevailing party reasonably expended on the litigation by a reasonable hourly rate.'"  Id. at *3 (quoting Caudle v. Bristow Optical Co., Inc., 224 F.3d 1014, 1028 (9th Cir. 2000)).  The lodestar amount "is presumptively a reasonable fee award."  Beach v. Wal-Mart Stores, Inc., No. 3:11-cv-00007, 2013 U.S. Dist. LEXIS 102901, at *9 (D. Nev. July 23, 2013).

---

[3] There are additional provisions in the Lease which authorize a fee award in Prologis's favor, but they will not be belabored here.  (See Exhibit "I" § 20.05(D) (if IGT breaches the Lease, Prologis may recover "[a]ny other amount, and court costs, necessary to compensate Landlord for all detriment proximately caused by Tenant's breach of its obligations under this Lease"), § 22.02 ("If Landlord utilizes the services of any attorney at law for the purpose of collecting any rent due and unpaid by Tenant . . ., Tenant agrees to pay Landlord reasonable attorneys' fees as determined by Landlord for such services, regardless of the fact that no legal action may be commenced or filed by Landlord."), and § 12 ("Tenant will . . . indemnify and hold Landlord harmless from  and against any and all . . . expenses . . . and liabilities, including attorney's fees, arising out of, connected with, or resulting from  any use of the Premises by Tenant, . . . including . . . any failure of Tenant to comply fully with all of the terms and conditions of this Lease . . . .")).  In addition, Prologis would be entitled to a fee award under the Offer of Judgment it tendered to IGT on January 31, 2012, under only NRS § 17.115 in the amount of $1,800,000.  (See Exhibit "J"; Ken-Mac Metals v. Independent Sheet Metal, Inc., No. 3:09-CV-0693, 2011 U.S. Dist. LEXIS 122430 (D. Nev. Oct. 21, 2011) (awarding plaintiff its fees based upon an offer of judgment made under NRS § 17.115)).

1

2

     a.  **The time spent by Prologis's attorneys on this case was reasonable, particularly given the zeal of IGT's defense**

3

    To establish the reasonableness of the time which Prologis's lawyers spent on this case,

4 Prologis is attaching hereto as Exhibit "K" a 45-page chart (the "Lodestar Summary") depicting

5 *all* of the time which its lawyers and paralegals expended on the case.  As the Court can see, the

6 work was billed to the nearest tenth (.1) of an hour which is a generally accepted time increment

7 for law firms.  Importantly, these time entries were made contemporaneously in relation to the

8 work performed and were included in the monthly bills to Prologis.

9

    The time which is included in the Lodestar Summary can generally be summarized as

10 encompassing the following work: (i) review the lease and other documents and confer with the

11 client representatives before even filing the complaint; (ii) researching a variety of issues before

12 filing the complaint (e.g., termination options, failure to timely exercise an option, strict vs.

13 substantial compliance with option terms, etc.); (iii) secure a final dismissal of the state court

14 summary eviction action (to which IGT would not stipulate); (iv) legal research regarding a

15 stipulated vs. a voluntary dismissal of a summary eviction action; (v) prepare the complaint and

16 other initial court-filings; (vi) participate in many telephone calls with, and e-mails to, the client

17 over the years regarding status, strategy, questions, etc.; (vii) numerous telephone calls and e-

18 mails to opposing counsel regarding all aspects of the litigation; (viii) prepare for and attend the

19 Rule 26(f) conference, work on initial disclosures and review Prologis's documents and prepare

20 same for production; (ix) consider strategy and work on propounding several sets of written

21 discovery and respond to IGT's several sets of written discovery; (x) review additional client-

22 produced documents and work on supplemental Rule 26(f) production issues (including

23 protective order issues); (xi) consider strategy on damage calculation issues and work on

24 calculating damages; (xii) work with economist on present value damage calculations and work

25 on expert witness disclosures; (xiii) consider strategy regarding and work on replacement tenant

26 issues; (xiv) review documents, prepare outlines, prepare witnesses and otherwise prepare for

27 and attend multiple depositions; (xv) work through numerous discovery issues with IGT"s

28 counsel; (xvi) oppose Defendant's Motion to Compel, attend hearing and prevail on discovery

Robertson, Johnson,
Miller & Williamson
50 West Liberty Street,
Suite 600
Reno, Nevada 89501

PLAINTIFF'S MOTION FOR ATTORNEYS' FEES AND NON-TAXABLE LITIGATION EXPENSES
PAGE 7

1    dispute issues; (xvii) legal research and analysis regarding the availability of equitable relief

2    from missed option deadlines, waiver and estoppel issues, implied covenant, surrender and

3    acceptance, and multiple other option issues in connection with summary judgment motions;

4    (xviii) review and summarize depositions; (xix) prepare extensive summary judgment motion,

5    opposition and reply, and prepare for summary judgment hearing; (xx) prepare for and attend

6    mediation; (xxi) work on Power Point presentations for the mediation and for trial; (xxii) work

7    on stipulated facts, witness issues, deposition transcript designations, trial exhibits, direct and

8    cross-examination preparation and outlines, trial statements, witness preparation, and otherwise

9    prepare for trial; (xxiii) prepare witnesses and exhibits for trial and attend trial; (xxiv) work on

10   post-trial damage exhibit submittal issues; (xxv) work on judgment-related issues and strategy;

11   (xxvi) work on attorneys' fees and costs issues – research, review and redact time entries, draft

12   motion, prepare declarations, locate and assemble exhibits, etc.

13           While the amount of time which Prologis's lawyers billed can hardly be viewed as

14   excessive given the above-described work summary, the $2.53 million dollar Judgment and the

15   nearly four (4) years of litigation (including a trial) it took to secure that Judgment, these fees

16   could have been far lower if IGT had been less resolute in its zeal to fully-litigate every issue.  A

17   party "cannot litigate tenaciously and then be heard to complain about the time necessarily spent

18   by the plaintiff in response."  Riverside v. Rivera, 477 U.S. 561, 681 (1986).[4]

19           By way of example:

20           (1)    Prologis offered to stipulate to dismissing the summary eviction action –

21   IGT refused and demanded payment of its fees and costs.  Prologis therefore tendered a

22   check for IGT's fees and costs, but IGT still refused to stipulate to dismissal of the

23   summary eviction action.  Prologis then determined it could voluntarily dismiss the

24   action unilaterally and did so.  IGT responded with a motion to set aside the dismissal

25   which, after much briefing, was eventually denied.  (See Exhibit "F.")  Thus, thousands

26

27           [4] To be clear, Prologis is not contending that IGT litigated in bad faith or that its counsel was anything
28   other than cordial in their extension of professional courtesies, but IGT certainly took advantage of every
     opportunity to litigate any issue and never made a serious offer to settle the case, (see Exhibit "L" (IGT's offer of
     judgment offering to pay a mere $385,000)), thereby requiring that Prologis fully prepare and litigate the case.

Robertson, Johnson,
Miller & Williamson
50 West Liberty Street,
Suite 600
Reno, Nevada 89501

PLAINTIFF'S MOTION FOR ATTORNEYS' FEES AND NON-TAXABLE LITIGATION EXPENSES
PAGE 8

of dollars were spent on a matter which could and should have ended with a stipulated resolution.

(2)     After the primary witnesses had been deposed (e.g., Stecker, Strickland, Weber, Page and Durfee), Prologis tried to streamline the case by suggesting to IGT that the parties stipulate that the remaining witnesses as disclosed in the Rule 26(f) disclosures not be called at trial, thus avoiding the time and expense of more depositions. (See Exhibit "H.")  IGT refused the offer, necessitating the depositions of such irrelevant witnesses as Anthony Ciorciari, Larizza Austria, and William Lamson.

(3)     At the conclusion of the summary judgment hearing, the Court made it very clear that it preferred that the parties "try" the case via the deposition transcripts without calling live witnesses (other than as might relate to damages).  (Exhibit "M" at 61:19 - 62:6.)  In the fall, as trial preparations were just beginning, Prologis offered to try the case on the depositions as the Court had suggested.  (See Exhibit "N.")  While IGT was initially willing to consider this procedure, after Chicago counsel became involved they made it clear that they wanted to call live witnesses, thus quashing the streamlined procedure.

There are other examples of IGT's hard-nosed litigation tactics, but the above three examples suffice to make the point.  Had IGT litigated a little less aggressively, it could have saved tens of thousands of dollars in legal expenses for both parties (and thus saved itself from some of the fees Prologis now seeks).  Having chosen the "Stalingrad defense," see Gay Officers Action League v. Puerto Rico, 247 F.3d 288, 298 (1st Cir. 2001), however, and thereby forcing Prologis to respond in-kind, there is now little room for IGT to complain about the hours expended by Prologis.

The hours expended on this case on a per-timekeeper basis are as follows:

| Timekeeper | Hours |
|---|---|
| G. David Robertson, Esq. | 160.60 |
| Kirk C. Johnson, Esq. | 901.00 |
| Richard Williamson, Esq. | 7.20 |
| Jonathan Tew, Esq. | 6.70 |
| Non-Nevada Attorney/Paralegal | 47.40 |

Robertson, Johnson,
Miller & Williamson
50 West Liberty Street,
Suite 600
Reno, Nevada 89501

PLAINTIFF'S MOTION FOR ATTORNEYS' FEES AND NON-TAXABLE LITIGATION EXPENSES
PAGE 9

| Kimberlee Hill | 80.70 |
|---|---|
| General Paralegal | 3.20 |
| **TOTAL:** | **1206.80** |

In reviewing the hours expended, "[b]y and large, the court should defer to the winning lawyer's professional judgment as to how much time he was required to spend on the case; after all, he won, and might not have, had he been more of a slacker." Moreno v. City of Sacramento, 534 F.3d 1106, 1112 (9th Cir. 2006).  Here, Prologis's counsel firmly believes that the hours they expended in this case, particularly when discounted by 10% as explained below, were reasonably required in order to prevail as against the highly-competent counsel representing IGT.

Accordingly, the Court should conclude that the hours spent by Prologis's attorneys were reasonably expended under the circumstances.

### b.    The billing rates for Prologis's attorneys are reasonable

For purposes of the lodestar calculation, reasonable hourly rates are determined by the "prevailing market rates in the relevant community." Blum v. Stenson, 465 U.S. 886, 895 (1984).  It is the burden of the prevailing party to provide evidence that the requested rates are in line with the prevailing rates in the community for similar services by lawyers of reasonably comparable skill and experience. See, e.g., Sorenson v. Mink, 239 F.3d 1140, 1145 (9th Cir 2001).  The prevailing party can satisfy this burden with declarations from its own attorneys, declarations of other attorneys in the community and by pointing to rate determinations in other cases. United Steelworkers of Am. v. Phelps Dodge Corp., 896 F.2d 403, 407 (9th Cir. 1990).  If the fee applicant fails to meet its burden of establishing the reasonableness of the requested rates, the Court may set the rate based upon its own experience and knowledge of prevailing rates in the community. See, e.g., Ilick v. Miller, 68 F. Supp. 2d 1169, 176 (D. Nev. 1999).

"The normal billing rate of the [prevailing] attorney is presumptively the reasonable hourly rate" for purposes of the lodestar calculation. Snell v. Reno Hilton Resort, 930 F. Supp. 1428, 1432 n.8 (D. Nev. 1996).  Prologis's counsel's current billing rates in this case and for clients and disputes of this nature are as follows: G. David Robertson (shareholder): $415; Kirk Johnson (shareholder): $345; Richard Williamson (shareholder): $295; Jonathan Tew

Robertson, Johnson,
Miller & Williamson
50 West Liberty Street,
Suite 600
Reno, Nevada 89501

PLAINTIFF'S MOTION FOR ATTORNEYS' FEES AND NON-TAXABLE LITIGATION EXPENSES
PAGE 10

(associate): $285; Non-Nevada attorneys/paralegals: $165;[5] Kimberlee Hill (paralegal): $145;[6] general paralegals: $135.[7]

Submitted herewith are declarations from Prologis's own counsel attesting to the reasonableness and customary nature of these rates in this District for attorneys and paralegals in comparable cases, having comparable experience.  Also submitted herewith are declarations from two non-participant attorneys, Don Springmeyer and Michael G. Chapman (each 30-year Nevada attorneys), also affirming the reasonableness and customary nature of these rates.

In addition, attached hereto, as Exhibit "O," is an affidavit from yet a third non-participant attorney (in another federal court case), having the same experience as Mr. Johnson (23 years of Nevada practice), whose "standard billing rate" in "an average breach of contract case" is $375 per hour, (see Exhibit "O" at ¶¶ 21 & 22), which Judge Jones found to be reasonable in Jensen Enterprises, Inc. v. Poisson Communications, Inc., No. 3:12-cv-00100, 2013 U.S. Dist. LEXIS 128948, at *20  (D. Nev. Sept. 6, 2013).

Finally, Prologis hereby directs the Court's attention to some recently-issued fees orders where the judges within this District approved rates similar to (or higher than) counsel's rates here:  In re USA Commercial Mrtg. Co., 802 F. Supp. 2d 1147, 1181 (D. Nev. 2011) (the "prevailing market rates for complex commercial litigation in Nevada [are] between $350 and $775 per hour"); Nevada Controls, LLC, 2013 U.S. Dist. LEXIS 103552, at *4 (awarding fees based on a rate of $350 per hour for an attorney with 6 fewer years of experience than Mr. Johnson); Am. Gen. Life Ins. Co. v. Futrell, No. 2:11-cv-00977, 2012 U.S. Dist. LEXIS 148471 (D. Nev. Oct. 16, 2012) (finding paralegal rate of $150 per hour to be reasonable); Constr. Indus. & Laborers Joint Pension Trust Fund v. Western Explosives Sys. Co., No., 2:13-cv-1086, 2014

---

[5] The reference to "non-Nevada attorneys/paralegals" refers to two recent employees at counsel's firm who were California-licensed attorneys, but not licensed Nevada attorneys, and whom were thus working and being billed as paralegals in Nevada.

[6] Paralegal fees are generally recoverable as part of the attorneys' fees.  See, e.g., Fitzgerald v. Law Office of Curtis O. Barnes, No. 1:12-cv-00071, 2013 U.S. Dist. LEXIS 53642, at *19-21 (E.D. Cal. Apr. 15, 2013).

[7] Due to the length of this litigation, Prologis has applied its attorneys' current billing rates to all of the time expended on the case, rather than using the historical rates and trying to add interest to those amounts to compensate Prologis for the delay in reimbursement of these fees.  See, e.g., Welch v. Metro. Life Ins. Co., 480 F.3d 942, 948 (9th Cir. 2007).

Robertson, Johnson,
Miller & Williamson
50 West Liberty Street,
Suite 600
Reno, Nevada 89501

PLAINTIFF'S MOTION FOR ATTORNEYS' FEES AND NON-TAXABLE LITIGATION EXPENSES
PAGE 11

1    U.S. Dist. LEXIS 9612 (D. Nev. Jan. 27, 2014) (finding paralegal rate of $165 per hour to be

2    reasonable).

3        Accordingly, the Court should have no difficulty concluding that the rates applied by

4    Prologis's counsel are the "prevailing market rates in the relevant community."

         **c.    Prologis has exercised "billing judgment" by reducing its
                 lodestar amount by 10% across-the-board**

7        Multiplying the hours expended on the case by the current hourly rate (i.e., market rate)

8    of each timekeeper provides a lodestar calculation on a per-timekeeper basis as follows:

| Timekeeper | Hours | Rate | Amount |
|---|---|---|---|
| G. David Robertson, Esq. | 160.60 | $415.00 | $66,649.00 |
| Kirk C. Johnson, Esq. | 901.00 | $345.00 | $310,845.00 |
| Richard Williamson, Esq. | 7.20 | $295.00 | $2,124.00 |
| Jonathan Tew, Esq. | 6.70 | $285.00 | $1,909.50 |
| Non-Nevada Attorney/Paralegal | 47.40 | $165.00 | $7,821.00 |
| Kimberlee Hill | 80.70 | $145.00 | $11,701.50 |
| General Paralegal | 3.20 | $135.00 | $432.00 |
| **TOTAL:** | **1206.80** | | **$401,482.00** |

16       Obviously, the Court must guard against awarding fees for time which was excessive,

17   redundant (due to over-staffing or otherwise) or generally unnecessary.  To address these very

18   concerns, prevailing parties often exercise "billing judgment" or "billing discretion" in

19   connection with their fee applications to incorporate self-imposed write-downs on their time (but

20   this practice is *not* required).  See, e.g., In re Nsa Telcoms. Records Litig., No. C 07-0109, 2010

21   U.S. Dist. LEXIS 136156, at *53 (N.D. Cal. Dec. 21, 2010), rev'd in part on other grounds, 690

22   F.3d 1089 (9th Cir. 2012).

23       Here, there is little risk of redundancy or over-staffing as a single attorney, Mr. Johnson,

24   performed the vast majority of the work on Prologis's behalf (nearly 75%).  Still, in order to

25   address any concerns of excessiveness or non-necessity as to the work performed, and to ensure

26   an eminently reasonable fee request, Prologis has exercised billing judgment by voluntarily

27   applying a 10% across-the-board discount to its lodestar figure.

28

Robertson, Johnson,
Miller & Williamson
50 West Liberty Street,
Suite 600
Reno, Nevada 89501

PLAINTIFF'S MOTION FOR ATTORNEYS' FEES AND NON-TAXABLE LITIGATION EXPENSES
PAGE 12

1    The Court should thus award the full, discounted fee amount - $361,333.80.[8]

2    **3.    The <u>Kerr</u> Factors Do Not Warrant Any Adjustment To The Lodestar**

3    After a court has performed the lodestar calculation, it "may assess whether it is

4    necessary to adjust the presumptively reasonable lodestar figure on the basis of the <u>Kerr</u> factors."

5    <u>Nevada Controls, LLC</u>, 2013 U.S. Dist. LEXIS 103552, at *3. These factors, first articulated in

6    <u>Kerr v. Screen Extras Guild, Inc.</u>, 526 F.2d 67, 70 (9th Cir. 1975), and now also set forth in LR

7    54-16(b)(3), may suggest to the court that the lodestar figure be adjusted upward or downward.

8    <u>Id.</u>; <u>see also Aevoe Corp. v. AE Tech Co., Ltd.</u>, No. 2:12-cv-00053, 2012 U.S. Dist. LEXIS

9    149243, at *6-7 (D. Nev. Oct. 16, 2012) (fees calculation is a two step process: (1) compute

10   lodestar; and (2) consider <u>Kerr</u> factors in deciding whether to increase or decrease the lodestar

11   amount). These factors are as follows:  (1) the time and labor required; (2) the novelty and

12   difficulty of the questions involved; (3) the skill requisite to perform the legal service properly;

13   (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the

14   customary fee; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the

15   client or the circumstances; (8)  the results obtained and the amount involved; (9) the experience,

16   reputation, and ability of the attorney(s); (10) the undesirability of the case, if any; (11) the

17   nature and length of the professional relationship with the client; (12) awards in similar cases.[9]

18   Although Prologis is not seeking a multiplier or to otherwise increase the lodestar figure above

19   the discounted amount requested, it will address these factors in anticipation that Defendant will

20   seek to have the lodestar amount reduced by more than Prologis's self-imposed 10% discount.

---

[8] This amount is even more reasonable when factoring in Prologis's exclusion from the fee request of the nearly 60 hours in fees incurred by its in-house counsel on this case.

[9] It is not clear which, if any, of these factors need be discussed herein, or in the Court's ruling on this Motion, as  courts have ultimately concluded that several, if not all, of the factors have been subsumed within the lodestar calculation. <u>See, e.g.</u>, <u>Toromanova v. Wells Fargo Bank, N.A.</u>, No. 2:12-cv-00328, 2013 U.S. Dist. LEXIS 165691, at *4 (D. Nev. Nov. 20, 2013) ("Factors one through five are subsumed in the lodestar calculation. Further, the sixth factor, whether the fee is fixed or contingent, *may not* be considered in the lodestar calculation." (Citations omitted)); <u>Mendez v. Reinforcing Ironworkers Union Local 416</u>, No. 2:09-cv-02332, 2013 U.S. Dist. LEXIS 120893, at *9 (D. Nev. Aug. 23, 2013) ("The court also strongly presumes most, if not all, of the <u>Kerr</u> factors, such as the case's novelty and the attorney's performance, are subsumed in the initial lodestar calculation, which is also strongly presumed reasonable.").

Robertson, Johnson,
Miller & Williamson
50 West Liberty Street,
Suite 600
Reno, Nevada 89501

1   a.   The time and labor required

2   This factor has undoubtedly been subsumed within the lodestar calculation, and Prologis

3   has already addressed this factor above.  In sum, this litigation spanned several years and was

4   hard-fought, culminating in a trial.  Prologis primarily utilized the services of a single attorney,

5   thereby negating any potential for duplicative efforts.  This factor certainly does not warrant a

6   lodestar reduction.

7   b.   The novelty and difficulty of the questions involved

8   As the Court noted at the summary judgment hearing, while there was strongly analogous

9   case law in Nevada, the unique issues relating to the untimely exercise of an early termination

10   option, and whether equity might provide relief from such an error, were ostensibly issues of first

11   impression in Nevada, thus requiring that counsel research case law from other jurisdictions

12   which, of course, necessitated even more research.  Moreover, Defendant's reliance on the

13   unique language of Section 42.01 of the Lease and Defendant's highly-fact-intensive waiver,

14   estoppel, and surrender-and-acceptance arguments all necessitated more time and effort than

15   might otherwise have been required in this case.  In sum, this factor does not warrant a

16   downward lodestar adjustment.

17   c.   The skill requisite to perform the legal service properly

18   Defendant was represented by highly reputable and competent counsel (and indeed ***two***

19   sets of counsel), thus necessitating that Prologis's counsel utilize their best efforts and all of the

20   skills at their disposal.  The fact that Prologis was able to secure such a large judgment in the

21   face of such a vehement and competent defense is a testament to counsel's skill and effort.

22   Indeed, the Court remarked at the end of trial that counsel for both parties were "a credit to the

23   bar."  Accordingly, great skill was needed and was exercised by all counsel here.  Again, no

24   adjustment to the lodestar is warranted.

25   / / / / /

26   / / / / /

27

28

Robertson, Johnson,
Miller & Williamson
50 West Liberty Street,
Suite 600
Reno, Nevada 89501

PLAINTIFF'S MOTION FOR ATTORNEYS' FEES AND NON-TAXABLE LITIGATION EXPENSES
PAGE 14

d.   The preclusion of other employment by the attorney due to acceptance of the case

As the Court can see in the Lodestar Summary, this case demanded its fair share of counsel's time and attention and undoubtedly precluded work on other cases. The preclusion, however, was not undue and does not, in any event, warrant a downward lodestar adjustment.

e.   The customary fee

This factor, too, is undoubtedly subsumed within the lodestar calculation and was discussed in great detail above. Accordingly, Prologis will not re-argue those points here other than to note that this factor will not support a downward lodestar adjustment.

f.   Whether the fee is fixed or contingent

Prologis has incurred fees in this case on an hourly basis; there is no contingency fee arrangement. Thus, this factor does not warrant an adjustment to the lodestar.

g.   The time limitations imposed by the client or the circumstances

While priority work which delays the attorney's other legal work is entitled to a premium (and this case did call for its share of priority work), such work was not so prevalent as to warrant a premium here. Again, therefore, no lodestar adjustment is warranted.

h.   The results obtained and the amount involved

"Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee. . . . [I]t is [not] necessarily significant that a prevailing plaintiff did not receive all the relief requested. . . . The result is what matters." Hensley v. Eckerhart, 461 U.S. 424, 435 (1983). Here, Prologis obtained a judgment in the face amount of $2,531,299.00 (plus additional pre-judgment interest). The only issue on which Prologis failed to prevail was the "late fees" issue. This setback is not enough to term Prologis's multi-million dollar trial victory anything other than "excellent." See, e.g., Stonebrae, L.P. v. Toll Bros., No. C-08-0221, 2011 U.S. Dist. LEXIS 39832, at *56-57 (N.D. Cal. Apr. 7, 2011) (recovery of nearly $5 million was an excellent result despite failure to recover tens of millions in unliquidated damages).[10] Thus, if

---

[10] "[T]he Ninth Circuit [has] held that the district court may consider settlement negotiations for the purpose of deciding a reasonable attorney fee award." Moshir v. Automobili Lamborghini Am. LLC, 927 F. Supp.

Robertson, Johnson, Miller & Williamson 50 West Liberty Street, Suite 600 Reno, Nevada 89501

1  this factor warranted *any* adjustment to the lodestar, it would be an increase; however, Prologis is

2  not seeking such an adjustment, thus no adjustment is warranted.

3               i.      The experience, reputation, and ability of the attorney(s)

4        This factor, too, is wholly subsumed within the lodestar calculation.  Prologis's counsel,

5  however, would direct the Court's attention to their curriculum vitae which are attached hereto as

6  Exhibit "Q" and which amply demonstrate that counsel are experienced commercial/real

7  property litigators.  As for counsel's abilities, the Court was able to witness those first-hand

8  during the trial.  In sum, this factor does not warrant a lodestar adjustment either.

9               j.      The undesirability of the case, if any

10        There was nothing undesirable about this case from Prologis's perspective (other than

11  having to fully litigate a dispute that should have settled), thus this factor does not warrant an

12  adjustment to the lodestar.

13               k.      The nature and length of the professional relationship with the

14                     client

15        Prologis's counsel has represented Prologis since 2010 on this and other lease-related

16  matters, but this fact would not appear to support a lodestar adjustment.

17               l.      Awards in similar cases

18        This factor, too, was discussed above in addressing the reasonableness of the requested

19  lodestar rates.  In sum, the awards in other cases in this District evidence the reasonableness of a

20  lodestar award here.  See, e.g., Holiday Systems International of Nevada v. Illusion Boutique

21  Hotel, No. 2:10-cv-00592, 2012 U.S. Dist. LEXIS 154026, at *15-24 (D. Nev. Oct. 25, 2012)

22  (awarding $65,467.30 in fees where the court entered a default judgment in the amount of

23  $110,372.37 on a commercial lease).

24

25

 

26  2d 789, 796 (D. Ariz. 2013) (internal quotations omitted).  Here, Prologis obtained a Judgment which was more than

27  six times the value of Defendant's $385,000 Offer of Judgment and more than 50% higher than Prologis's lowest
settlement offer of $1,500,000, (see Exhibit "P"), thus establishing beyond dispute the excellence of the result

28  obtained.  Cf. Ingram v. Orodijian, 647 F.3d 925, 927 (9th Cir. 2011) ("rejection of a settlement offer that was six
times the jury award was probative of the plaintiff's lack of success").

Robertson, Johnson,
Miller & Williamson
50 West Liberty Street,
Suite 600
Reno, Nevada 89501

1    In the end analysis, it is critical to recall that there is a "strong presumption" that the

2  lodestar figure represents a reasonable fee.  E.g., Fischer v. SJB-P.D. Inc., 214 F.3d 1115, 1119

3  n.4 (9th Cir. 2000).  Indeed, a court is authorized to adjust the lodestar figure in only very "rare

4  and exceptional cases."  Id. (quoting Pennsylvania v. Delaware Valley Citizens' Council for

5  Clean Air, 478 U.S. 546, 565 (1986)).  This is certainly not one of the "rare and exceptional"

6  cases as the lodestar amount is unquestionably reasonable given the results achieved.

7    Accordingly, the Court should simply award the full lodestar amount requested without

8  any further adjustment beyond the already-included 10% discount, i.e., $ 361,333.80.

9    **B.    PROLOGIS IS ENTITLED TO RECOVER $29,433.13 IN NON-TAXABLE**
       **LITIGATION EXPENSES FROM DEFENDANT**
10

11    In addition to attorneys' fees, Prologis, as the prevailing party, is entitled to recover its

12  court costs from Defendant.  Fed. R. Civ. P. 54(d)(1); LR 54-1.  Prologis has, therefore, filed the

13  requisite Bill of Costs contemporaneously with the filing of this Motion.[11]  These "routine" court

14  costs are to be awarded by the Clerk "as a matter of course."  Abrams v. Lightolier, Inc., 50 F.3d

15  1204, 1223 (3d Cir. 1995).  The costs recoverable under these provisions, however, are

16  somewhat limited.  See 28 U.S.C. § 1920; LR 54-1 – LR 54-12.

17    The costs and litigation expenses which are not otherwise taxable under Fed. R. Civ. P.

18  54(d)(1) may very well be recoverable under Fed. R. Civ. P. 54(d)(2), which authorizes the

19  recovery of attorney's fees "and related nontaxable expenses" if sought by way of a motion.  See

20  also LR 54-16(b)(2).  Recovery under these latter provisions requires a statute or contract

21  authorizing the recovery of such costs.  Here, both Nevada law and the Lease authorize

22  Prologis's recovery of those litigation expenses which are not otherwise taxable under Fed. R.

23  Civ. P. 52(d)(1).

24    As this is a diversity action, Nevada law may be applied to support an award of litigation

25  expenses which are not otherwise taxable under federal law.  See In re USA Commercial Mrtg.

26  Co., 802 F. Supp. 2d at 1179-80.  "Nevada law . . . entitles a prevailing party, as a matter of

27
28

[11] Prologis hereby requests that any costs included in the contemporaneously-filed Bill of Costs which are ultimately taxed by the Clerk or the Court, be reviewed as recoverable under this Motion.

Robertson, Johnson,
Miller & Williamson
50 West Liberty Street,
Suite 600
Reno, Nevada 89501

1   right, to recover its costs in an action in which damages in excess of $2,500 are sought."  Id.

2   (citing NRS § 18.020(3)).[12]   The costs recoverable under Nevada law are expressly enumerated

3   in NRS § 18.005.  See id.  The costs listed in NRS § 18.005 are customarily charged to clients

4   separate and distinct from the attorneys' fees in this forum.  Nevada statutory law, therefore,

5   entitles Prologis to recover the out-of-pocket litigation expenses listed in the Supplemental Bill

6   of Costs attached hereto as Exhibit "R."

7          In addition, the express language of the Lease makes very clear that Prologis, as the

8   prevailing party, is entitled to recover not only its court costs, but also its "legal expenses" and

9   "any other amount . . . necessary to compensate Landlord for all detriment proximately caused

10  by Tenant's breach of its obligations under [the] Lease."  (Exhibit "I" at §§ 28.06 & 28.05(D);

11  see also Exhibit "I" at § 12 ("Tenant will . . . indemnify and hold Landlord harmless from and

12  against any and all . . . expenses . . . and liabilities . . . arising out of, connected with, or resulting

13  from . . . any failure of Tenant to comply fully with all of the terms . . . of this Lease . . . .")).

14         Prologis, therefore, is entitled to recover not only its taxable costs but also its non-taxable

15  litigation expenses, under both Nevada statutory law and the Lease.  The Court should thus

16  award all of the expenses set forth in Exhibit "R."

17  **IV.   CONCLUSION**

18         For the foregoing reasons, the Court should award Prologis all of the requested, but self-

19  discounted, attorneys' fees ($361,333.80) plus reimbursement of its out-of-pocket litigation

20  expenses ($29,433.13), all totaling $390,766.93.[13]

21         RESPECTFULLY SUBMITTED this 28th day of February, 2014.

22                        ROBERTSON, JOHNSON, MILLER & WILLIAMSON

23                  By:      /s/  G. David Robertson
24                        G. David Robertson, Esq.
                         Kirk C. Johnson, Esq.
25                        Attorneys for Plaintiff

26         [12] Prologis would also be entitled to recover its non-taxable costs pursuant to its offer of judgment under
27  NRS 17.115.  See Exhibit "J" and Ken-Mac Metals, 2011 U.S. Dist. LEXIS 122430, at *4-5 (awarding costs to
    plaintiff under an offer of judgment).

28         [13] Again, this amount will be updated with fees and costs which are incurred through the date of Prologis's
    reply on this Motion.

Robertson, Johnson,
Miller & Williamson
50 West Liberty Street,
Suite 600
Reno, Nevada 89501

**INDEX OF EXHIBITS**

| Ex. | Description | Pages |
|---|---|---|
| A | Email from attorney Johnson, dated October 6, 2010 | 3 |
| B | Emails between attorney Johnson and attorney Gallagher, dated October 7, 2010 | 1 |
| C | Letter from attorney Johnson, dated January 10, 2011 | 4 |
| D | Letter from attorney Gallagher, dated January 13, 2011 | 3 |
| E | Letter from attorney Johnson, dated January 24, 2011 | 4 |
| F | Order, dated April 22, 2011 | 3 |
| G | Disclosure of Expert Witnesses, dated January 13, 2012 | 1 |
| H | Letter from attorney Johnson, dated April 18, 2012 | 4 |
| I | Lease | 22 |
| J | Offer of Judgment, dated January 31, 2012 | 3 |
| K | Lodestar Summary | 46 |
| L | Offer of Judgment, dated January 24, 2012 | 3 |
| M | Transcript of Motions Hearing, dated January 29, 2013 (Portion) | 4 |
| N | Emails between attorney Johnson and attorney Gallagher, dated October 14, 2013 | 3 |
| O | Affidavit of Matthew C. Addison | 14 |
| P | Letter from attorney Johnson, dated March 8, 2013 | 1 |
| Q | Curriculum Vitae for timekeepers | 8 |
| R | Supplemental Bill of Costs | 39 |

Robertson, Johnson,
Miller & Williamson
50 West Liberty Street,
Suite 600
Reno, Nevada 89501

1

## <u>CERTIFICATE OF SERVICE</u>

2      Pursuant to FRCP 5(b) and Local Rule 5-4, I hereby certify that I am an employee of

3   Robertson, Johnson, Miller & Williamson, over the age of eighteen, and not a party to the within

4   action.   I further certify that on the 28th day of February, 2014, I electronically filed

5   **PLAINITFF'S   MOTION   FOR   ATTORNEYS'   FEES   AND   NON-TAXABLE**

6   **LITIGATION EXPENSES** and pursuant to LR 5-4, caused same to be served by electronic

7   mail on the following Filing User(s):

8

9   JOHN K. GALLAGHER, ESQ.
    PAUL D. QUANDT, ESQ.
    S. TIMOTHY SUMMERS, ESQ.
10  GUILD, RUSSELL, GALLAGHER
      & FULLER, LTD.
11  100 West Liberty Street, Suite 800
    P.O. Box 2838
12  Reno, Nevada 89505
    (775) 786-2366
13  (775) 322-9105 (fax)

JOHN C. FITZPATRICK (Admitted Pro Hac Vice)
SHARON ROCHE YECIES (Admitted Pro Hac Vice)
BARTLIT BECK HERMAN
  PALENCHAR & SCOTT LLP
54 West Hubbard Street
Suite 300
Chicago, Illinois 60654
(312) 494-4400
(312) 494-4440 (fax)

*Attorneys for IGT*

14

15

16      /s/ Kimberlee A. Hill
    An Employee of Robertson, Johnson, Miller & Williamson

17

18

19

20

21

22

23

24

25

26

27

28